[No. 1690.]

## YOUNG BROTHERS v. MINKLER ET AL.

SALES—DELIVERY—EVIDENCE—PRACTICE.

In an action for the value of hay cut by plaintiffs for defendants and stacked on defendants' premises and which was destroyed by fire before it was measured to determine the amount on which to compute the purchase price, where the issue was as to whether the delivery was complete before the measurement, or whether the measurement was a condition precedent to delivery, and the evidence as to when and how the measurement was to be made was conflicting and was submitted to the jury under proper instructions, the verdict of the jury in favor of plaintiffs will not be disturbed.

*Appeal from the District Court of Washington County.*

Mr. FRANK I. WILLSEA, for appellants.

No appearance for appellee.

BISSELL, P. J.

Minkler and Filer cut a lot of grass, probably on the public domain, and stacked it on the premises of Young Brothers who were engaged in farming in Washington county, Colorado. During the time the grass was being stacked Young Brothers paid the plaintiffs $20.00 and after it was all put up $20.00 more, making $40.00 in all. This suit was brought for the balance of the agreed price which was unpaid. The plaintiffs had judgment for $104 of which they remitted $10.00 and from this ultimate judgment Young Brothers prosecute the appeal.

The circumstances under which the grass was cut were about these: Minkler and Filer were about to cut some hay and made an arrangement with the foreman representing Young Brothers to stack some on Young Brothers' premises close to the corral in which they kept some of their stock. The original arrangement contemplated the cutting of fifteen tons,

but the amount was subsequently increased, and the whole amount that was cut and stacked was accepted by the foreman and for its value this suit was begun.   According to the testimony the parties were directed to stack it within a few feet of the corral, which was done, and on the completion of the stack it was poled and weighted to keep it from blowing away and a wire fence was put around it by the foreman's directions.   As already stated when it was completed another $20.00 was paid.   There was some little dispute respecting the terms and conditions under which the hay was received and under which it was to be measured and paid for.   Out of this dispute the whole controversy grows.   On the forty-first day after the completion of the stack, the hay burned up, and it not having been at the time measured by Young Brothers, they refused to pay for it.   There was evidence to the proposition that after the hay was stacked it was to settle before measurement, but it was to be measured within a month or six weeks.   On the measurement then made its value at $3.75 per ton was to be determined.   There was evidence to the point that if neither of the firm came down to measure it, which was their custom, the foreman himself would call for one of the plaintiffs and they would measure it and on that measurement the value should be computed.

The principal proposition argued by counsel and really presented in the case respects the delivery of the hay.   Counsel for the appellants very ably argues, that if the measurement was a part of the contract in the sense that the hay was not to be regarded as delivered, although stacked and fenced, until after the measurements should be made, then the plaintiffs could not recover because the hay was consumed before the lapse of the time, which by the contract was to expire before the measurement.   There are several answers to the proposition and all of them more or less drawn from the testimony as exhibited by the record.   According to some of the evidence six weeks was not necessarily to elapse.   Neither was the measurement necessarily to be made by Young Brothers, but the foreman was to come for one of the plaintiffs and

they together should measure it and determine the value. These matters were left to the jury by proper instructions and they found for the plaintiffs, and we are not inclined to disagree with the verdict. Further than all this, however, there is evidence in the record from which the jury might conclude the measurement was no part of the contract of delivery, but the hay was bought at $3.75 a ton. It was stacked on the premises belonging to Young Brothers, it was fenced with posts and wires, and from these circumstances, the jury had a right, if they so concluded, to decide the hay was delivered when the stack was completed and there was nothing which the plaintiffs had to do under the contract to complete the delivery. In other words, the measurement might have been simply and solely a means to be employed to determine the price to be paid and not an incidental part of the actual performance by the plaintiffs. We are very frank to say we should have concluded from the testimony itself, as a matter of law, that the contract was completed when the hay was stacked and fenced, and that the measurement was no part of the agreement, but was simply a point of time agreed on by the parties for measurement purposes, and to give the hay a chance to settle and sink to determine its exact quantity. This was really the evidence, and we think it wholly justified the verdict.

The court instructed the jury on the proposition, that if it was a part of the contract that the hay was to stand for six weeks and not to be regarded as delivered until measured, then the plaintiffs could not recover, but if on the other hand, the contract was that the hay was to be delivered at a specific place, and it was then accepted by the foreman of the plaintiffs, and the measurement was simply to ascertain the amount and the value, that then the plaintiffs could recover. This instruction was right and submitted the proposition to the jury. The jury found for the plaintiffs and we cannot disturb the verdict.

In reality this is the only substantial proposition which is presented by the brief of counsel for the appellants, who alone

are represented at this hearing.   There is considerable complaint made regarding some instructions given by the court, apparently at the request of plaintiffs' counsel, and some of them may perhaps be open to criticism, but we do not find anything so radically bad and misleading as to compel us to reverse an apparently just judgment.   We are wholly unable to agree with counsel, that the jury might have been or probably were misled by what the court said, or that any of them are so clearly wrong that the judgment should be disturbed because they were given.

We are unable to discover any errors in the record which compel or justify a reversal.   Justice seems to have been done and we do not feel at liberty to disturb the judgment, which will accordingly be affirmed.

*Affirmed.*